**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA    )
                            )
v.                          )
                            )    Criminal No. 21-385-18
LAWRENCE STROTHERS, SR.,    )
                            )
         Defendant.         )

**MEMORANDUM OPINION**

Presently before the Court is Defendant's Motion for Appeal of Order of Detention, in which he requests the Court to reconsider the order of detention pending trial or other disposition of this case. (Docket Nos. 700, 726, 802). The Motion is opposed by the Government. (Docket No. 749). After careful consideration of the parties' positions, and review of the detention hearing transcript, the evidence introduced at the hearing, (Docket Nos. 422, 750), and the referenced Pretrial Services Report, Defendant's Motion will be denied. As required by 18 U.S.C. § 3142(i)(1), the following includes the Court's findings of fact and statement of the reasons for detention.

I.   **BACKGROUND**

A.   **PROCEDURAL HISTORY**

Defendant and 23 co-defendants are charged in Count One of the Indictment with conspiracy to possess with intent to distribute and distribute 400 grams of more of fentanyl, 280 grams or more of crack cocaine, a quantity of cocaine, a quantity of heroin and a quantity of fluorofentanyl, in violation of 21 U.S.C. § 846, for conduct occurring from in and around August 2019 and continuing until in and around August 2021. (Docket No. 3). Defendant also is charged with two counts of possession with intent to distribute and distribution of a quantity of fentanyl

for conduct occurring on or about July 8, 2021 (Count 11) and on or about July 12, 2021 (Count 12), and one count of possession with intent to distribute and distribution of a quantity of fluorofentanyl for conduct occurring on or about July 15, 2021 (Count 13), all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).   An arrest warrant was issued for Defendant on September 2, 2021.  (Docket No. 24).

After Defendant was arrested, he had an initial appearance on September 9, 2021, followed by an arraignment on September 13, 2021, at which time he pled not guilty to the charges.  (Docket Nos. 65, 194, 195).  Defendant also had a detention hearing on September 13, 2021 before Magistrate Judge Patricia Dodge, who entered an order of detention pending trial.  (Docket Nos. 198, 199, 422).

Presently before the Court is Defendant's Motion for Appeal of Order of Detention, in which he requests the Court to reconsider the order of detention pending trial or other disposition of this case.  (Docket No. 700).  In support, Defendant contends that consideration of the factors set forth in 18 U.S.C. § 3142(g) weigh in favor of his pretrial release for the following reasons: although this is a serious case, there were no undercover buys involving Defendant and no drugs were seized from him; he has solid family and community ties and an excellent employment record; he is not a danger to the community because "anyone with whom [he] was supposedly dealing in this indictment and awaiting trial [are] detained"; and, if released, he proffers that he will reside at an address in Pittsburgh, Pennsylvania with Alyesha Dobbs, who will serve as a third-party custodian.  (Docket No. 726 at 2).

The Government opposes Defendant's Motion, and argues that Defendant must be detained pending trial because the rebuttable presumption applies in this case based on the charges he faces, consideration of the § 3142(g) factors weigh in favor of detention, and there is no condition or

combination of conditions which will reasonably assure the safety of the community if he is released.  (Docket No. 749 at 4-9).

### B.  **EVIDENCE ADDUCED AT THE DETENTION HEARING**

At the September 13th hearing, the Government presented testimony by Federal Bureau of Investigation Special Agent ("SA") Aaron Francis, who works on the Greater Pittsburgh Safe Streets Task Force.  (Docket No. 422 at 7).  SA Francis explained that the Task Force investigates violent gang activity and drug activity in the greater Pittsburgh area.  (*Id.*).  To that end, SA Francis testified that he worked on an investigation related to Defendant, as well as the Hazelwood Mob Down Low Gang, which is a neighborhood street gang located in the Hazelwood area of Pittsburgh (the "Hazelwood Gang") involved in distributing fentanyl and crack cocaine.  (*Id.* at 8).  The investigation ultimately led to a Title III wiretap of 15 telephones, including one of Defendant's telephones.  (*Id.*).  SA Francis testified that intercepted communications involving Defendant during the time period from mid-May to mid-July, 2021 confirmed that he was part of a conspiracy to distribute narcotics as charged in the Indictment.  (*Id.* at 9).

More specifically, SA Francis testified that Defendant's alleged role in the conspiracy involved obtaining quantities of fentanyl and crack cocaine and distributing those controlled substances to other distributors in the Hazelwood Gang, as well as to end-user customers.  (Docket No. 422 at 9).  SA Francis further testified that the Indictment charges Defendant with three substantive counts resulting from the seizure of fentanyl or fluorofentanyl during traffic stops of customers who purchased those substances from Defendant.  (*Id.*).  According to SA Francis, Defendant's total fentanyl and crack cocaine sales from May 20 to June 3, 2021 extrapolated over the two-month interception period for his phone indicate that he trafficked approximately 112 bricks of fentanyl (which equates to more than 100 grams of fentanyl) and approximately 260

grams of crack cocaine during that period alone.  (*Id.* at 10-11).

SA Francis additionally testified that Defendant had regular contact with individuals involved in violence.  (Docket No. 422 at 11).  On that point, SA Francis testified as follows concerning a line sheet report,[1] (*see* Docket Nos. 422 at 11; 750), relative to various intercepted calls involving Defendant:

- In a call on May 24, 2021, Defendant and Marvin Wood argued about Wood owing Defendant money.  (Docket No. 422 at 12-13).  Wood complained that the cocaine he received from Defendant was bad or that he did not like it.  (*Id.* at 13).  Defendant stated that he had to meet customers or makes moves and that he was on his way to get his gun.  (*Id.*).

- During a call on June 6, 2021, co-defendant Dorian Wood asked Defendant where his firearm was located, to which Defendant responded that he did not have it because he had given it to his son.  (Docket No. 422 at 13-14).  Defendant also mentioned another gun that he had in his possession.  (*Id.* at 14-15).

- In another call on June 6, 2021, Defendant told Dani Robinson that he would go get his gun.  (Docket No. 422 at 15).

- On June 13, 2021, Defendant and Gary Jackson discussed a dispute that they were having with an individual named Randy and considered whether they should break Randy's jaw or handle the dispute in a different manner.  (Docket No. 422 at 16-17).

- In a call on June 14, 2021, Defendant told Dani Robinson about a shooting that occurred near his home, and he talked about teaching the person who committed the shooting a lesson because he had done it so close to Defendant's home.  (Docket No. 422 at 17).  In response to Ms. Robinson's question, Defendant indicated that he wanted to harm the shooter.  (*Id.* at 18).

- Defendant expressed in a call on July 12, 2021 that he was upset about losing $15,000 to $30,000 on bad narcotics, he was trying to decide what he wanted to do about the matter, and he mentioned that one of his options was to shoot someone in the head.  (Docket No. 422 at 19).

- Additionally, on July 12, 2021, Defendant and Brian Guiney, who was one of Defendant's customers, discussed police surveillance and the like, and Defendant

---

[1]     SA Francis explained that the line sheet report, which was admitted at the detention hearing, was generated from the FBI's intercept software and contains a law enforcement officer's written synopsis of telephone calls intercepted over Defendant's telephone during the Title III wiretap investigation.  (Docket No. 422 at 11-12).

indicated that he accidently left a firearm on his porch in the recent past but eventually remembered to retrieve it.  (Docket No. 422 at 21).

Finally, SA Francis testified that, when Defendant was arrested at his home in Hazelwood on September 9, 2021, law enforcement recovered 23 bricks of fentanyl located in a four-wheeler next to his house and in a grill behind the neighbor's house.  (Docket No. 422 at 21-22).  According to SA Francis, Defendant referenced fentanyl in the four-wheeler and the grill on multiple occasions during the intercepted communications.  (*Id.* at 22).

Defendant did not introduce any evidence at the detention hearing.  (Docket No. 422 at 25).

Following receipt of the foregoing evidence at the hearing and argument by counsel, Judge Dodge initially noted that the Government is entitled to a rebuttable presumption that detention is needed based on the drug trafficking offenses Defendant faces, and found that Defendant did not present any credible evidence to rebut the applicable presumption.  (Docket Nos. 199 at 2; 422 at 31).  In so ruling, Judge Dodge considered the four factors required to be considered under the Bail Reform Act,[2] and determined that Defendant is a danger to the community, and there are no conditions that can be imposed which will reasonably assure the safety of the community.  (Docket Nos. 199 at 2-3; 422 at 31-34).  Consequently, Judge Dodge entered an order detaining Defendant pending trial or other disposition of this matter.  (Docket Nos. 199; 422 at 34).  Defendant's appeal of the detention order eventually followed.

After reviewing the transcript of the detention hearing before Judge Dodge along with the

---

[2]     As to those factors, Judge Dodge commented that the charged drug trafficking conspiracy offense and the substantive offenses are serious offenses; the weight of the evidence against Defendant as to his involvement in the charged offenses is strong; his criminal history is significant and involves the same type of offenses with which he is charged in this case, including the commission of offenses while either on bond or on probation; and evidence presented at the hearing shows Defendant was involved in drug dealing, and potentially connected with firearms and other violence, all of which demonstrates that he is a danger to the community.  (Docket No. 422  at 31-34).  The Court agrees with Judge Dodge's findings on all of these points for reasons stated herein.

evidence introduced at the hearing, and considering the Pretrial Services Report, as well as the arguments advanced by the parties in their briefing, the Court concludes that there is no condition or combination of conditions which will reasonably assure the safety of the community if Defendant is released.

## II.   **LEGAL STANDARD**

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.* (the "BRA"), governs release and detention pending judicial proceedings.  Pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  A district court exercises *de novo* review over a detention order entered by a magistrate judge.  *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985).  "De novo review does not require an additional evidentiary hearing[,]" and the district court "may make its independent determination based solely upon the evidence introduced at the prior hearing."  *United States v. Kolonis*, No. 2:20-cr-0146, 2020 WL 5253192, at *3 (W.D. Pa. Sept. 3, 2020) (quoting *United States v. Burgess*, No. 2:09-cr-150, 2009 WL 2038148, at *2 (W.D. Pa. July 8, 2009)); *see also United States v. Bastianelli*, Crim. No. 17-305, 2018 WL 1015269, at *4 (W.D. Pa. Feb. 22, 2018) ("The Court retains the discretion to make its determination after reviewing the record developed before the U.S. Magistrate Judge or to accept additional evidence from the parties and rule on the expanded record.").  The Court may incorporate the transcript of the proceedings before the magistrate judge and does so here.  *See United States v. Chagra*, 850 F. Supp. 354, 357 (W.D. Pa. 1994).  As stated, the Court has reviewed the detention hearing transcript, the Pretrial Services Report and the information contained in the parties' briefing, and concludes that an additional

hearing is not necessary because the record is fully developed.

As noted, the availability of pretrial release is controlled by the BRA, which provides that a defendant must be released on his personal recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Following a hearing, if the judicial officer finds that no condition or combination of conditions of release will reasonably assure the defendant's appearance and the safety of the community, detention must be ordered. 18 U.S.C. § 3142(e)(1). In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of the community, the judicial officer must consider the § 3142(g) factors concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

> (2) the weight of the evidence against the person;

> (3) the history and characteristics of the person, including--

>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Certain cases raise a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. 18 U.S.C. § 3142(e)(3). This rebuttable presumption applies to cases, among others, in which there is probable cause to believe that the defendant committed an offense under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, for which the maximum term of imprisonment is ten years or more. 18 U.S.C. § 3142(e)(3)(A). An indictment charging a defendant with committing an offense enumerated in § 3142(e)(3) is sufficient to establish probable cause triggering the rebuttable presumption. *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986).

A defendant may rebut the presumption in § 3142(e) by producing "some credible evidence . . . that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The defendant's burden of production is relatively light and has been construed as easy to meet.[3] *Chagra*, 850 F. Supp. at 357 (citation omitted). If rebutted, however, the presumption does not disappear but rather "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.* at 358 (citation omitted). If the defendant rebuts the presumption, the burden of persuasion remains with the Government. *Id.* at 357. Thus, the Government bears the burden of proving that the defendant presents either a risk of flight or a danger to the community.[4]

---

3    To rebut the presumption that the defendant presents a danger to the community, "he must come forward with some credible evidence that he will not continue to engage in the drug activities with which he has been charged." *Chagra*, 850 F. Supp. at 358 (citations omitted). This may be accomplished through "'testimony by co-workers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health, or family situation.'" *Suppa*, 799 F.2d at 120 (quoting *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986)).

4    The Government must prove by a preponderance of the evidence that the defendant is a flight risk and that no condition or combination of conditions will assure his appearance at trial. *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Government must prove by clear and convincing evidence that the defendant is a danger to the safety of any other person or the community. *Delker*, 757 F.2d at 1399.

III.    **DISCUSSION**

Initially, Defendant is charged in Count One of the Indictment with conspiracy to possess with intent to distribute and distribute 400 grams of more of fentanyl, 280 grams or more of crack cocaine, a quantity of cocaine, a quantity of heroin and a quantity of fluorofentanyl, which carries a mandatory penalty of not less than ten years and up to life imprisonment. *See* 21 U.S.C. §§ 841(b)(1)(A)(iii), 841(b)(1)(A)(vi).  He is also charged in Counts 11, 12 and 13 with possession with intent to distribute and distribution of a quantity of fentanyl and/or fluorofentanyl, each of which carry a penalty of up to twenty years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(C). Defendant does not dispute that these charges raise the rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A).

Defendant attempts to rebut the presumption by suggesting that he has ties to the community and therefore is not a flight risk, individuals with whom Defendant was dealing as alleged in the Indictment are detained pending trial and thus he is not a danger to the community, and conditions can be imposed to assure his appearance and the safety of the community. (Docket No. 726 at 2).  To illustrate, Defendant proposes that he will reside with Ms. Dobbs, who is willing to serve as a third-party custodian if he is released. (Docket Nos. 700, ¶ 2; 726 at 2).

After reviewing the record, the Court agrees with Judge Dodge that Defendant did not introduce sufficient evidence to rebut the applicable presumption. (Docket Nos. 199 at 2; 422 at 31).  Even if Defendant had done so, however, the Court further concludes that the Government has presented clear and convincing evidence that he is a danger to the safety of the community such that pretrial detention was, and is, appropriately ordered in this case.  In reaching these decisions, the Court has conducted an independent examination of the record as a whole and

balanced the four factors set forth in 18 U.S.C. § 3142(g).  For reasons that follow, the Court finds

that the available information and proffered evidence on each of those factors weigh in favor of

detention.

### A.  <u>Nature and Circumstances of the Offenses Charged</u>

As discussed, this case arises from an investigation related to Defendant, as well as the

Hazelwood Gang, which is involved in the distribution of fentanyl and crack cocaine.  (Docket

No. 422 at 8).  The investigation ultimately led to a Title III wiretap of 15 telephones, including

one of Defendant's telephones.  (*Id.*).  Intercepted communications indicated that Defendant was

part of a conspiracy to distribute narcotics.  (*Id.* at 9).  Defendant's alleged role in the conspiracy

involved obtaining quantities of fentanyl and crack cocaine and distributing those controlled

substances to other distributors and to end-user customers.  (*Id.*).  Additionally, fentanyl and/or

fluorofentanyl was seized during traffic stops of customers who allegedly purchased those

substances from Defendant.  (*Id.*).  According to SA Francis' testimony, Defendant trafficked

approximately 260 grams of crack cocaine and more than 100 grams of fentanyl during the two-

month time period that his telephone was subject to the Title III wiretap.  (*Id.* at 10-11).

As a result of Defendant's alleged conduct in this case, he has been indicted on a charge of

conspiracy to possess with intent to distribute and distribute 400 grams of more of fentanyl, 280

grams or more of crack cocaine, a quantity of cocaine, a quantity of heroin and a quantity of

fluorofentanyl, as well as three counts of possession with intent to distribute and distribution of a

quantity of fentanyl and/or fluorofentanyl, (*see* Docket No. 3), which are very serious controlled

substance offenses.  If convicted, he faces a mandatory statutory term of not less than 10 years and

up to life imprisonment at Count One, and he also faces a maximum statutory term of not more

than 20 years' imprisonment at each of Counts 11, 12 and 13.  Given all of this, the nature and

circumstances of the offenses charged weigh strongly in favor of pretrial detention.

### B. <u>Weight of the Evidence</u>

While Defendant is presumed innocent of the charged offenses, the Court agrees with Judge Dodge that the weight of the evidence presented at the detention hearing was strong, consisting of wiretap surveillance and the seizure of narcotics from alleged customers of Defendant.  (Docket No. 422 at 33).  As a general matter, the grand jury's return of the Indictment establishes probable cause that the offenses occurred, and thus demonstrates that the weight of the evidence against Defendant is relatively strong.  More specifically, however, SA Francis testified that intercepted calls involving Defendant indicated that he was part of a conspiracy to distribute narcotics.  (*Id.* at 8-9).  As SA Francis further testified, the three substantive counts against Defendant resulted from the seizure of fentanyl or fluorofentanyl during traffic stops of customers who allegedly purchased those substances from Defendant.  (*Id.* at 9).  Additionally, when Defendant was arrested, fentanyl was seized from two areas he referenced on multiple occasions during the intercepted calls.  (*Id.* at 22).  In sum, while recognizing that Defendant is presumed innocent of the charged offenses, the weight of the evidence against him favors pretrial detention.

### C. <u>History and Characteristics of Defendant</u>

As to Defendant's background and characteristics, he was born and raised in Pittsburgh, Pennsylvania, and he is now 39 years' old.[5]  Defendant's mother, father and seven siblings live in the Pittsburgh area, and he has regular contact with his family members.  Defendant is single and has two children.  As to community ties, Defendant has lived at the same address in Pittsburgh his

---

5       Defendant's background, residence, family ties, employment history, physical and mental health, substance abuse history and criminal history are described in the Pretrial Services Report prepared by the United States Pretrial Services Office.  The Court notes that neither party has objected to the contents of this Report relative to Defendant's history and characteristics as detailed therein.

entire life, and he was employed by Jackson's Contracting full time since 2012.  As discussed, Defendant proposes to reside with Ms. Dobbs, who is willing to serve as a third-party custodian for him if he is released.  (*See* Docket Nos. 700, ¶ 2; 726 at 2).

Next, Defendant characterized his physical health as good, and he reported no history of mental health conditions.  As for substance abuse, Defendant began using cannabinoids at age 13, which continued on a daily basis until his arrest in this case.  Defendant reported no history of substance abuse treatment.

Turning to Defendant's criminal history, Judge Dodge correctly observed that it is significant and involves the same type of offenses with which he is charged in this case, including the commission of offenses while either on bond or on probation.  (Docket No. 422 at 33-34). Notably, Defendant has six prior convictions for possession with intent to deliver a controlled substance, for which he was sentenced to significant periods of incarceration, including a term of five to ten years.  He also has prior convictions for a firearms offense, possession of a controlled substance, resisting arrest and false identification to law enforcement.  Moreover, Defendant committed new offenses in the past while on bond or probation on ten occasions, and he is alleged to have engaged in the conduct charged in the instant case while on probation.  Overall, Defendant's prior interactions with the criminal justice system have not deterred him from engaging in additional criminal activity, nor did court-imposed conditions and supervision curb his unlawful behavior.  All told, Defendant's criminal history and conduct while under court supervision weigh very strongly against pretrial release.

In analyzing Defendant's history and characteristics, the Court is cognizant that it must consider all possible conditions of release, including his proposal to reside with Ms. Dobbs, who is willing to serve as a third-party custodian.  The Court appreciates that Ms. Dobbs is amenable

to serving as a third-party custodian for him, but has serious concerns about such an arrangement, regardless of who would assume that role. Although Ms. Dobbs is no doubt well-intentioned, the mere fact that she is willing to serve as a third-party custodian does not mean that she, or anyone else, could adequately supervise a defendant who is charged with extremely serious drug trafficking offenses. *See United States v. Bey*, Crim. No. 15-87, 2015 WL 7176340, at *5 (W.D. Pa. Nov. 13, 2015) ("[T]he mere fact that a relative or other individual is willing to serve as a third party custodian for a defendant is not sufficient to justify release on such conditions but is among the factors to be considered when evaluating whether release or detention is appropriate in a given case.").

The Court also cannot ignore Defendant's demonstrated history of engaging in criminal conduct while under court supervision as already discussed. Moreover, he is now exposed to a significant term of at least ten years' incarceration if he is convicted at Count One and up to twenty years' incarceration at each of Counts 11, 12 and 13 if convicted, which increases the incentive to flee.[6] In light of Defendant's prior conduct while under court supervision, the nature of the charged drug trafficking offenses and the substantial penalties he faces if convicted, this Court is not persuaded that release to a third-party custodian, electronic monitoring or other means of personal supervision would assure the safety of the community and his appearance as required in this case. *See e.g., Chagra*, 850 F. Supp. at 359-60 (given, *inter alia*, that the defendant faced minimum term of 20 years' imprisonment on drug conspiracy charge and the conspiracy involved large sums of

---

6    It stands to reason that a defendant who is facing a substantial period of incarceration may have a heightened incentive to flee, which the Court cannot simply ignore. *See United States v. Oliver*, Crim. No. 16-40, 2016 WL 1746853, at *9 (W.D. Pa. May 3, 2016) ("[T]he risk of Defendant's potential to flee from prosecution is heightened due to the substantial penalties he faces if convicted in this case. . . ."); *United States v. Ewell*, Crim. No. 13-125, 2013 WL 4479029, at *3 (W.D. Pa. Aug. 20, 2013) ("The potential for flight from prosecution is now greater as [the defendant] has been charged with such a serious offense and faces very severe penalties, if convicted."); *United States v. Miller*, Crim. No. 00-103-02, 2000 WL 633048, at *4 (E.D. Pa. May 9, 2000) (noting that "a serious potential penalty provides a strong incentive to flee").

cash, the court was not satisfied that any possible conditions of release would reasonably assure the defendant's appearance, as "[e]lectronic monitoring and other means of personal supervision … only notify authorities that the defendant is already fleeing"). Overall, the Court finds that Defendant's history and characteristics weigh in favor of pretrial detention.

### D. Nature and Seriousness of Danger to Any Person or the Community if Released

The final factor requires consideration of the nature and seriousness of the danger to any person or the community if Defendant is released. As to this factor, this Court has explained that:

> [it] agrees with others which have observed that drug trafficking poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of a dangerous, addictive drug such as cocaine as alleged to have occurred here. *See Bastianelli*, 2020 WL 1015269, at *8 ("Drug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of very dangerous and addictive drugs [ ]."); *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) ("[V]iolence is not the only danger to the community this court must consider. The court must also consider the danger of trafficking in illicit drugs."). Distribution of Schedule II controlled substances like cocaine[7] have a "high potential for abuse" and that abuse "may lead to severe psychological or physical dependence." *See Bastianelli*, 2018 WL 1015269, at *8 (citing 21 U.S.C. § 812(b)(2)(A), (C)). Accordingly, the high volume of cocaine allegedly trafficked in this case presents a considerable danger to the safety of the community.

> Ultimately, consideration of this factor requires a court to "*predict* whether defendant will engage in drug trafficking if released pending trial." *United States v. Bratcher*, Crim. No. 14-28, 2014 WL 1371582, at *8 (W.D. Pa. Apr. 8, 2014) (emphasis in original) (citing *Perry*, 788 F.2d at 114) ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior."). The Court recognizes, as others have, that strict conditions of release, including conditions such as home confinement and electronic monitoring, cannot guarantee that a defendant will no longer

---

7       Here, Defendant is charged at Count One of the Indictment with conspiracy to possess with intent to distribute and distribute 400 grams of more of fentanyl, 280 grams or more of crack cocaine, a quantity of cocaine, a quantity of heroin and a quantity of fluorofentanyl, and he is also charged with possession with intent to distribute and distribution of a quantity of fentanyl and/or fluorofentanyl at each of Counts 11, 12 and 13. (Docket No. 3). Like cocaine, crack cocaine and fentanyl are Schedule II controlled substances, whereas heroin and fluorofentanyl are Schedule I controlled substances. *See id.; see also* 21 U.S.C. § 812. Schedule I controlled substances have "a high potential for abuse" and "no currently accepted medical use in treatment in the United States." 21 U.S.C. §§ 812(b)(1)(A), (B).

engage in criminal activity.  *See e.g.*, *Bastianelli*, 2018 WL 1015269, at *8 (citing *United States v. Yarbough*, No. 2:14-cr-270-11, 2014 WL 7343839, *4 (W.D. Pa. Dec. 23, 2014) ("If released to home detention, nothing prevents Defendant from continuing to engage in illegal activity.")).

*United States v. Araiza-Vega*, Crim. No. 20-218, 2020 WL 6546136, at *8 (W.D. Pa. Nov. 6, 2020).

These observations concerning the substantial risk of harm to the community posed by drug trafficking equally apply in Defendant's case.  Further, as Judge Dodge explained, evidence presented at the detention hearing also indicates that Defendant made "multiple references to firearms and potential violence." (Docket No. 422 at 32).  The Court cannot overlook the obvious danger to the community posed by the combination of drug trafficking and firearm possession as suggested by the evidence introduced in Defendant's case.[8] *See Oliver*, 2016 WL 1746853, at *9 ("[T]he utilization of firearms in furtherance of drug trafficking poses a significant threat of violence.").  Additionally, the Court reiterates that Defendant apparently was not deterred by the sentences he received for his past crimes and/or the conditions imposed upon him in his prior cases as evidenced by the fact that he continued to engage in illegal conduct and ultimately the serious criminal activity charged here, which suggests that he may be inclined to repeat his illicit activity if released.  All told, based on the serious nature of the charges here, along with all of the other factors the Court has considered, the Court finds that the weight of the evidence is such that

---

[8]     On this point, the Court observes that the Government presented evidence of intercepted calls involving Defendant's discussion of firearm possession, (*see* Docket No. 422 at 13-15, 21), as well as intercepted calls wherein he contemplated violence toward others, such as considering whether to break someone's jaw because of a dispute they were having, whether to shoot someone in the head over money he lost on bad drugs, and indicating that he wanted to harm someone who was involved in a shooting close to his home. (*See id.* at 16-19).  In the Court's estimation, this evidence further indicates that Defendant would pose a danger to the safety of the community if he were to be released.

In reaching this determination, the Court rejects Defendant's assertion that he is not a danger to the community because "[a]nyone whom [he] was supposedly dealing in this indictment and awaiting trial [are] detained. No danger exists to any witnesses as they are all in law enforcement." (Docket No. 726 at 2).  To the contrary, certain co-defendants are released on bond pending trial or other disposition of this matter, and the Government submits that there are potential civilian witnesses who are not incarcerated. (*See* Docket Nos. 152, 153, 166, 167, 172, 173, 222, 223, 236, 237, 313, 314, 308, 309, 374, 375, 388, 389, 717, 718, 749 at 8, n.1).

Defendant's release on bond would pose a serious risk of his continued drug trafficking and other criminal activities.  As such, this final factor weighs in favor of pretrial detention.

In sum, after considering the record as a whole, including the nature and circumstances of the serious drug offenses charged, the weight of the evidence against Defendant, his history and characteristics, the nature and seriousness of the danger to the community posed by his release, and the rebuttable presumption, which retains evidentiary weight, there is no condition or set of conditions which will reasonably assure the safety of the community if Defendant is released pending trial or other disposition of this matter.  Accordingly, pretrial detention was, and is, appropriately ordered.

## IV.   **CONCLUSION**

Given the Court's finding that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released, Defendant's Motion requesting the Court to reconsider the order of detention pending trial or other disposition of this case is denied.

An appropriate Order follows.

_s/ W. Scott Hardy_
W. Scott Hardy
United States District Judge

Date:   July 6, 2022

cc/ecf:  All counsel of record
United States Marshal

16